IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KEVIN JORDAN,

      Petitioner,

v.                         CASE NO. 3:15-cv-336-MCR-GRJ

SECRETARY, DEPT.
OF CORRECTIONS,

      Respondent.

_____/

## **REPORT AND RECOMMENDATION**

Petitioner initiated this case by filing a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, stemming from his conviction for first-degree felony murder with a firearm. (ECF No. 1.) Respondent has filed a response and appendix with relevant portions of the state-court record, arguing that the Petition should be denied. (ECF No. 15.) Petitioner filed a reply, (ECF No. 22), and the Petition is therefore ripe for review. Upon due consideration of the Petition, the response, the state-court record, and the reply, the undersigned recommends that the Petition should be denied.[1]

---

[1] The Court has determined that an evidentiary hearing is not warranted because it can resolve the Petition on the basis of the record. *See* Rule 8, Rules Governing Habeas Corpus Petitions Under Section 2254.

## I.  Summary of State Court Proceedings

Petitioner was charged by indictment on February 23, 2010, with one count of first-degree felony murder with a firearm committed on or about July 31, 1996, in violation of Fla. Stat. §§ 775.087, 782.04. (ECF No. 16-1 at 7–8.) Barry W. McCleary, Esq., was appointed to represent Petitioner in the case. (*Id.* at 19.) At the time, Petitioner was in county jail awaiting sentencing in a separate case for driving with a suspended license, for which he faced up to five years' imprisonment. (*Id.* at 11; ECF No. 16-3 at 62–69.)

Petitioner eventually proceeded to trial on the first-degree felony murder charge. (ECF No. 16-2 at 84.) At trial the state introduced into evidence an October 1, 2009, recorded interview of Petitioner by Detective Smeester. (*Id.* at 213.) During the interview Petitioner admitted that he suggested to "Little Allen" that "Little Allen" should rob the victim and that he thereafter went to the victim's house with "Little Allen." (*Id.* at 236–37.) Although Petitioner then claimed that "Little Allen" shot the victim at the front door of the house, Petitioner admitted he was outside a window around the corner of the house with a pistol when "Little Allen" shot the victim. (*Id.*) During the interview Detective Smeester made reference to

possible consideration at Petitioner's upcoming sentencing for driving with a suspended license in exchange for the information he provided about the murder, but Petitioner simply said he expected to get time-served. (*Id.* at 255–56, 267–68.) Defendant then contacted Detective Smeester around October 18, 2009 after he was sentenced to five years' imprisonment for driving with a suspended license. (*Id.* at 268; ECF No. 16-3 at 3.) Petitioner told Detective Smeester he received a sentence he did not like and was wondering if Detective Smeester could help him out. (ECF No. 16-2 at 268.) Detective Smeester then went back to talk to Petitioner on October 23, 2009. (*Id.*)

The state introduced the October 23, 2009, recorded interview of Petitioner by Detective Smeester . (ECF No. 16-3 at 1.) During the interview Petitioner recounted the same story about Little Allen shooting the victim while Petitioner was at the window. (*Id.* at 5–8.) Detective Smeester then told Petitioner the state might hold Petitioner responsible for the 1996 murder. (*Id.* at 12.) Petitioner responded by saying he felt stupid for opening his mouth. (*Id.*)

Several days later, Petitioner called Detective Smeester and recanted his statements, saying that he told Detective Smeester the story

in an attempt to stay out of prison on the driving charge by providing information about the murder. (*Id.* at 29–30.) Detective Smeester testified that he listened to phone calls Petitioner made to various people from jail. (*Id.* at 30–31.) During the calls Petitioner said that he made up the story with information he had gotten from the police and people in the area to try to get his time cut, but that it did not work. (*Id.* at 32–34, 47–49.)

Petitioner also testified at trial. (*Id.* at 62.) Petitioner testified that he gave the false confession to try to get out of going to jail for driving with a suspended license. (*Id.* at 63.) Petitioner said he did not think he would be arrested for murder when he made up the story. (*Id.* at 69.)

The trial judge include in the jury instructions, an instruction on the lesser included offenses of second degree murder and manslaughter. (*Id.* at 168–83.) Defense counsel did not object to the jury instructions. (*Id.* at 183.)

During deliberations the jury submitted a question to the court asking whether there were any recordings from the jail phone call conversations. (*Id.* at 189.) The trial judge instructed the jury that they received all of the evidence that they were going to receive in the case. (*Id.* at 191–92.) The jury eventually found Petitioner guilty as charged of first degree felony

murder with a firearm (ECF No. 16-1 at 93; ECF No. 16-3 at 194–96.)

Petitioner was sentenced on May 5, 2011, to a mandatory life sentence. (ECF No. 16-1 at 74–75, 96–97.) Petitioner filed his notice of appeal on May 5, 2011, and thereafter raised one issue in his appellate brief: Whether the trial court committed fundamental error in instructing the jury on the law of principals. (*Id.* at 103; ECF No. 16-3 at 223.) The First District Court of Appeal ("First DCA") per curiam affirmed without written opinion on February 24, 2012, and the mandate followed on March 13, 2012. (*Id.* at 235–37.)

Petitioner then filed a *pro se* motion for postconviction relief in the trial court on November 26, 2012. (*Id.* at 239–87.) On February 26, 2013, trial court struck Petitioner's motion for postconviction relief as facially insufficient. (ECF No. 16-4 at 59–61.) Petitioner then filed an amended motion for postconviction relief on April 29, 2013, in which he raised six grounds of ineffective assistance of counsel. He alleged that his counsel failed to: (1) object to the jury instruction on the law of principals, (2) provide a complete defense to the exclusion of inadmissible evidence at the motion in limine hearing, (3) invoke the hearsay exception rule to permit the introduction of exculpatory evidence from an unavailable

witness, (4) introduce the recorded jail phone calls into evidence so that Petitioner did not have to testify to establish his defense, (5) introduce into evidence the recorded jail phone calls to impeach Detective Smeester and negate a key portion of the state's theory of the case; and (6) call witness Sabrina Jones to testify at trial. (*Id.* at 63–110.) Petitioner also raised a seventh ground claiming that Mr. McCleary's failure to introduce the recorded jail phone calls into evidence at trial denied Petitioner his right to due process. (*Id.*)

On November 13, 2013, the trial court issued an order scheduling a limited evidentiary hearing on claim five. R. Todd Early, Esq., was appointed to represent Petitioner at the evidentiary hearing. (*Id.* at 189–90, 195–96, 198.)

The evidentiary hearing took place on March 12, 2014. (*Id.* at 198–227.) On April 8, 2014, the trial court issued an order denying Petitioner's amended motion for postconviction relief. (*Id.* at 255–64.) Petitioner filed a *pro se* appeal to the First DCA, arguing that Mr. Early's failure to present the recorded jail phone calls at the evidentiary hearing violated Petitioner's right to due process. (ECF No. 16-5 at 173–84.) On October 20, 2014, the First DCA per curiam affirmed without written

opinion. (*Id.* at 220.) Petitioner filed a motion for rehearing, which the First DCA denied on December 2, 2014. (*Id.* at 222–26.) The mandate followed on December 18, 2014. (*Id.* at 228.)[2]

Petitioner thereafter filed the instant Petition in this Court on July 24, 2015. (ECF No. 1.)

## II.  Section 2254 Standard of Review

Before bringing a habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. §§ 2254(b)(1), (c). Exhaustion requires that prisoners give the state courts a "full and fair opportunity" to resolve all federal constitutional claims by "invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To properly exhaust a federal claim, a petitioner must "fairly present" the claim in each appropriate state court, thereby affording the state courts a meaningful opportunity to "pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

---

[2] Petitioner subsequently filed two Rule 3.800(a) motions to correct illegal sentence. (ECF No. 16-5 at 230–35, 249–53.) His first Rule 3.800(a) motion was granted, thereby awarding him an additional seven days of jail credit. (*Id.* at 237–47.) His second Rule 3.800(a) motion, however, was denied and the First DCA per curiam affirmed without written opinion. (*Id.* at 255–63, 277–79.)

(quotation omitted).

When a petitioner fails to properly exhaust a federal claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred under state law, the claim is procedurally defaulted. *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999). Federal habeas courts are precluded from reviewing the merits of procedurally defaulted claims unless the petitioner can show either (1) cause for the failure to properly present the claim and actual prejudice from the default, or (2) that a fundamental miscarriage of justice would result if the claim were not considered. *Id*. at 1302, 1306.

Under 28 U.S.C. § 2254(d)(2), a federal court may not grant a state prisoner's application for a writ of habeas corpus based on a claim already adjudicated on the merits in state court unless that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Under § 2254(e)(1), the petitioner must advance clear and convincing evidence that the state court's factual determination was "objectively unreasonable" to rebut the presumption that the determination was correct. *Gill v. Mecusker*, 633 F.3d 1272, 1287 (11th Cir. 2011); *see also* § 2254(e)(1).

As to legal findings, a petitioner is entitled to federal habeas relief only if the state court's adjudication of the merits of the federal claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). "[C]learly established Federal law, as determined by the Supreme Court of the United States," refers only to holdings (rather than *dicta*) of the Supreme Court, but decisions of lower federal courts may be considered to the extent that they demonstrate how those courts applied Supreme Court holdings. *Hawkins v. Alabama,* 318 F.3d 1302, 1309 (11th Cir. 2003) (citations omitted) ("The decisions of other federal circuit courts (and our decisions for that matter) are helpful to the AEDPA inquiry only to the extent that the decisions demonstrate that the Supreme Court's pre-existing, clearly established law compelled the circuit courts (and by implication would compel a state court) to decide in a definite way the case before them."). *See also Carey v. Musladin,* 549 U.S. 70, 74–77 (2006) (§ 2254 refers to holdings, rather than *dicta,* of the Supreme Court, collecting circuit cases "[r]eflecting the lack of guidance from this Court," on the issue).

The "contrary to" and "unreasonable application" clauses of §

2254(d)(1) have independent meanings. *Williams v. Taylor,* 529 U.S. 362, 404–06 (2000); *Bell v. Cone,* 535 U.S. 685, 694 (2002) (citing *Williams,* 529 U.S. at 362). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 412–13. "Avoiding these pitfalls [described in *Williams v. Taylor* ] does not require citation of our cases-indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer,* 537 U.S. 3, 8 (2002) (emphasis in original). Further, "whether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson,* 542 U.S. 649, 652 (2004).

In *Gill,* the Eleventh Circuit clarified how the federal habeas court should address the "unreasonable application of law" and the

"unreasonable determination of facts" tests. The court acknowledged the well-settled principle that summary affirmances, such as the Florida First District Court of Appeal's in this case, are presumed adjudicated on the merits and warrant deference. 633 F.3d at 1288 (citing *Harrington v. Richter*, 526 U.S. 86 (2011), and *Wright v. Sec'y for the Dep't of Corr.*, 278 F.3d 1245, 1254 (11th Cir. 2002)). "A judicial decision and a judicial opinion are not the same thing," and the Supreme Court has confirmed that determining whether the state court unreasonably applied the law or unreasonably determined the facts requires only a decision, not an opinion. *Id*. at 1291 (citing *Harrington*, 131 S. Ct. at 784). Yet, the Supreme Court has never squarely addressed whether under the "unreasonable application" test a federal habeas court "looks exclusively to the objective reasonableness of the state court's ultimate conclusion or must also consider the method by which the state court arrives at its conclusion." *Id.* at 1289 (quoting *Neal v. Puckett*, 286 F.3d 230, 244–45 (5th Cir. 2002) (summarizing the emerging circuit split)). The Eleventh Circuit concluded that district courts must apply the plain language of § 2254(d) and answer the "precise question" raised in a claim based on the state court's ultimate legal conclusion, and should not "evaluate or rely upon the correctness of

the state court's process of reasoning." *Id.* at 1291. In short, the court stated, "the statutory language focuses on the result, not on the reasoning that led to the result." *Id.*

In light of *Gill,* the "unreasonable determination of facts" standard plays a limited role in habeas review because the district court considers the reasonableness of the trial court's fact finding only to the extent that the state court's ultimate conclusion relied on it. *Id.* at 1292. A federal habeas court can consider the full record before it to answer "the only question that matters[:]" whether the state court's decision was objectively unreasonable. *Gill*, 133 F.3d at 1290.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697.

To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action

that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216

(11th Cir. 2001) (emphasis omitted). "The relevant question is not whether

counsel's choices were strategic, but whether they were reasonable." *Roe*

*v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules"

for determining whether counsel's actions were indeed reasonable, as

"[a]bsolute rules would interfere with counsel's independence—which is

also constitutionally protected—and would restrict the wide latitude counsel

have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244

(11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not

attempt to divine the lawyer's mental processes underlying the strategy."

*Chandler v. United States*, 218 F.3d 1305, 1314 n.16 (11th Cir. 2000) (en

banc). "No lawyer can be expected to have considered all of the ways [to

provide effective assistance]." *Id*.

> If a defense lawyer pursued course A, it is immaterial that some
> other reasonable courses of defense (that the lawyer did not
> think of at all) existed and that the lawyer's pursuit of course A
> was not a deliberate choice between course A, course B, and
> so on.  The lawyer's strategy was course A.  And [the Court's]
> inquiry is limited to whether this strategy, that is, course A,
> might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that

counsel's unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*.

When the state courts have denied an ineffective assistance of counsel claim on the merits, the standard a petitioner must meet to obtain federal habeas relief is a difficult one. *Harrington*, 562 U.S. at 102. The standard is not whether an error was committed, but whether the state court decision is contrary to or an unreasonable application of federal law that has been clearly established by decisions of the Supreme Court. 28 U.S.C. § 2254(d)(1). As the Supreme Court explained, error alone is not enough, because "[f]or purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington*, 562 U.S. at 100 (quotation marks omitted). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. at 102.

When faced with an ineffective assistance of counsel claim that was

denied on the merits by the state courts, a federal habeas court "must determine what arguments or theories supported or, [if none were stated], could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. So long as fairminded jurists could disagree about whether the state court's denial of the claim was inconsistent with an earlier Supreme Court decision, federal habeas relief must be denied. *Id*. Stated the other way, only if "there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents" may relief be granted. *Id*.

Even without the deference due under § 2254, the *Strickland* standard for judging the performance of counsel "is a most deferential one." *Id.* at 788. When combined with the extra layer of deference that § 2254 provides, the result is double deference and the question becomes whether "there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*. Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.

## III.  Discussion

### A.    Ground One: Ineffective Assistance of Trial Counsel and Due Process Violation

Petitioner raises two subclaims for relief in ground one. First, Petitioner claims trial counsel, Mr. McCleary, was ineffective for failing to introduce into evidence various recorded phone calls that Petitioner made from jail, which Petitioner says would have impeached Detective Smeester. Second, Petitioner claims that postconviction counsel Mr. Early's failure to introduce those phone calls into evidence at the Rule 3.850 evidentiary hearing violated Petitioner's right to due process.

#### 1.    Ineffective Assistance of Trial Counsel

Petitioner argues that Mr. McCleary's failure to introduce the phone calls at trial allowed Detective Smeester's testimony to go unchallenged. He contends that as a result, the prosecutor was able to argue to the jury that Petitioner never told anyone he made up the story until after he learned he would be charged with the murder. Petitioner says the phone call evidence would have shown that he made up the story *before* contacting law enforcement because the calls were made before he contacted law enforcement. Thus, Petitioner argues that he likely would have been acquitted if the phone calls been admitted into evidence. This

claim, however, is unexhausted and procedurally defaulted.

Petitioner raised this claim in ground five of his amended motion for postconviction relief. The trial court denied the entire motion following an evidentiary hearing on this specific claim. Although Petitioner appealed to the First DCA, Petitioner only raised one issue in his appellate brief—that Mr. Early's failure to present the recorded jail phone calls at the evidentiary hearing violated Petitioner's right to due process.[3]

Petitioner did not appeal the trial court's denial of ground five. Florida procedural rules require an appellate brief to be filed when appealing an order denying a postconviction motion following an evidentiary hearing. *See* Fla. R. App. P. 9.141(b)(3)(C) (requiring initial briefs to be served within 30 days of service of the record or its index); *Pennington v. State*, 34 So. 3d 151, 152 n.1 (Fla. Dist. Ct. App. 2010) ("Briefing is required in an appeal from a non-summary denial of a Rule 3.850 motion."). Any issue that is not briefed on appeal is deemed waived. *Duest v. Duest*, 555 So. 2d 849, 852 (Fla. 1990). Thus, Petitioner failed to exhaust this claim because

---

[3] Although Petitioner's appellate brief discussed, for background purposes, how Mr. Early allegedly rendered ineffective assistance of counsel by not presenting the recordings at the evidentiary hearing, his "sole argument on appeal [was] that postconviction counsel's failure to acquire, transcribe, and introduce into evidence at the evidentiary hearing the recorded phone calls . . . has prevented Appellant from being provided 'meaningful access' during his postconviction evidentiary hearing thereby violati[ng] his due process rights." (ECF No. 16-5 at 182.) Petitioner goes on to argue that "it was error to proceed to the hearing absent the phone calls." (*Id.*)

he did not brief this issue on appeal from the denial of his postconviction motion. *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (exhaustion requires not only the filing of a Rule 3.850 motion, but also an appeal of its denial).

This claim is also procedurally defaulted because Petitioner is not entitled to a second appeal. *See Jones v. Sec'y*, No. 2:08-cv-625-FtM-29SPC, 2011 WL 4435079, at *21 (M.D. Fla. Sept. 23, 2011) (finding seven grounds for relief unexhausted and procedurally defaulted because petitioner failed to brief them on appeal where his postconviction motion was denied following an evidentiary hearing); *Sweet v. State*, 810 So. 2d 854, 870 (Fla. 2002) (holding that claims raised on appeal from an order denying postconviction relief are procedurally barred if the petitioner receives an evidentiary hearing but does not fully brief each issue on appeal).

A procedurally defaulted claim like Petitioner's can support federal habeas relief in only two narrow situations. First, the petitioner may demonstrate cause and prejudice for the default. *Mize v. Hall*, 532 F.3d 1184, 1190 (11th Cir. 2008). "'[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him . . . ." *Coleman v. Thompson*, 501 U.S. 722, 753

(1991). Attorney error that constitutes ineffective assistance of counsel violative of the Sixth Amendment can render "cause." *Murray v. Carrier*, 477 U.S. 478, 487 (1986). But, an ineffective assistance of counsel claim must generally be presented to the state courts as an independent claim before it can be used to establish cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (citing *Murray*, 477 U.S. at 489). In such case, unless the prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, the ineffective assistance of counsel claim cannot serve as cause for another procedurally defaulted claim. *Id.* at 453. To show prejudice, the petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different had the constitutional violation not occurred. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

Second, the petitioner may show that enforcing the procedural default would result in a fundamental miscarriage of justice. *Mize*, 532 F.3d at 1190. To show a fundamental miscarriage of justice, the petitioner must show that in light of new evidence, no reasonable juror would have convicted him. *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Petitioner has failed to demonstrate either cause and prejudice for

the default or a fundamental miscarriage of justice.

In his reply, Petitioner argues that Mr. Early's ineffective assistance at the evidentiary hearing satisfies the requisite cause and prejudice to excuse his default. While ineffective assistance of counsel can demonstrate cause for the default in some situations, it cannot do so here because Mr. Early had nothing to do with Petitioner's *pro se* appellate brief. Nothing suggests that Petitioner failed to brief this issue on appeal because of some external factor. *See Coleman*, 501 U.S. at 753 ("cause" must be something external to the petition that cannot fairly be attributed to him). And because Petitioner cannot show cause for his default, the Court need not proceed to the issue of prejudice. *See Ward v. Hall*, 592 F.3d 1144 (11th Cir. 2010) ("It is well established that if the petitioner fails to show cause, we need not proceed to the issue of prejudice."). Petitioner also does not offer any new evidence, establishing that no reasonable juror would have convicted him. He therefore cannot demonstrate a fundamental miscarriage of justice to excuse his procedural default. *See Mize*, 532 F.3d at 1190. Accordingly, Petitioner is not entitled to relief on subclaim one.

## 2.   Due Process Violation

In subclaim two Petitioner argues that Mr. Early's failure to present either the recorded phone calls or transcripts of the phone calls at the

evidentiary hearing violated his due process right because the presentation

of the calls was the sole purpose of the evidentiary hearing. Petitioner

therefore contends that he did not have "meaningful access" to the judicial

process during his evidentiary hearing.

Even assuming this subclaim was exhausted—which it was not

because it was never presented to the trial court to pass upon—it does not

constitute a cognizable claim for federal habeas relief. It is well established

in the Eleventh Circuit that a prisoner's challenge to the process afforded

him in a state post-conviction proceeding does not constitute a cognizable

claim for federal habeas corpus relief "because such a claim represents an

attack on a proceeding collateral to the prisoner's confinement and not the

confinement itself." *Stupar v. Crews*, No. 3:12CV391/LC/CJK, 2014 WL

37681, at *19 (N.D. Fla. Jan. 6, 2014) (citing *Alston v. Dep't of Corr., Fla.*,

610 F.3d 1318, 1326 (11th Cir. 2010)); *see also Carroll v. Sec'y Dep't of*

*Corr., Fla. Attorney Gen.*, 574 F.3d 1354, 1366 (11th Cir. 2009) (holding

that petitioner's habeas claim—that the state court violated his due process

rights when it summarily denied his postconviction claim without an

evidentiary hearing—did not state a claim on which federal habeas relief

could be granted); *Quince v. Crosby*, 360 F.3d 1259, 1261–62 (11th Cir.

2004) (explaining that "while habeas relief is available to address defects in

a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (petitioner's claim that errors in the Rule 3.850 proceedings violated his right to due process did not state a basis for federal habeas relief because the claim went "to issues unrelated to the cause of petitioner's detention."). Because Petitioner's due process challenge involves the process afforded him in a proceeding collateral to his confinement and not the confinement itself, it does not provide a basis for federal habeas relief. *See Carroll*, 574 F.3d at 1365 ("[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself—and thus habeas relief is not an appropriate remedy.")

Furthermore, to the extent that subclaim two is construed as an ineffective assistance of postconviction counsel claim couched as a due process claim, the claim still fails. "The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." § 2254(I); *see also Williams v. Turpin*, 87 F.3d 1204, 1210 (11th Cir. 1996) (citing *Murray v. Giarratano*, 492 U.S. 1, 12 (1989); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)) ("Because meaningful and equal access to the

state court system is adequately provided through the direct appeal process, there is generally no constitutional right to effective assistance of counsel in state collateral proceedings.") Subclaim two should therefore be denied.

## B.   *Ground Two: Ineffective Assistance of Trial Counsel*

Petitioner claims Mr. McCleary was ineffective for failing to object to the written jury instructions, which did not include a second-degree murder instruction. Petitioner says that although the trial judge orally instructed the jury that every element of second-degree murder must be proven beyond a reasonable doubt, if the jury had the written jury instructions on second-degree murder there is a reasonable possibility it would have instead found Petitioner guilty of second-degree murder—not first-degree murder—because the evidence at trial demonstrated only general intent.

Ground two is unexhausted and procedurally defaulted. Petitioner concedes that he did not present this claim to the state courts. (ECF No. 1 at 13.) Petitioner also cannot return to state court to present this claim in a postconviction motion. *See* Fla. R. Crim. P. 3.850(b) (establishing a two-year limitations period for a motion under Rule 3.850).

Petitioner argues that his procedural default should be excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), because the trial court did not

appoint counsel to represent him in the initial review collateral proceedings.

In *Martinez*, the Supreme Court held that when, under state law,

> claims of ineffective assistance of trial counsel must be raised
> in an initial-review collateral proceeding, a procedural default
> will not bar a federal habeas court from hearing a substantial
> claim of ineffective assistance at trial if, in the initial-review
> collateral proceeding, there was no counsel or counsel in that
> proceeding was ineffective.

566 U.S. at 17. This exception only applies, however, where:

> (1) a state requires a prisoner to raise ineffective-trial-counsel
> claims at the initial-review stage of a state collateral proceeding
> and precludes those claims on direct appeal; (2) the prisoner
> did not comply with state rules and failed to raise
> ineffective-trial-counsel claims properly in his state initial-review
> collateral proceeding; (3) the prisoner had no counsel (or his
> appointed counsel was ineffective by not raising
> ineffective-trial-counsel claims) in the initial-review collateral
> proceeding; and (4) not excusing the procedural default would
> cause the prisoner to lose a "substantial"
> ineffective-trial-counsel claim.

*Rigg v. Warden, Blackwater River Corr. Facility*, 685 F. App'x 812, 815

(11th Cir.), *cert. denied*, *Rigg v. Maiorana*, 138 S. Ct. 485 (2017). "A

'substantial' claim is one that has 'some merit.'" *Id.* at 816 (quoting

*Martinez*, 566 U.S. at 14)).

Even assuming Petitioner meets the first three requirements,

Petitioner cannot utilize the *Martinez* exception because his ineffective trial

counsel claim has no merit and he therefore does not meet the fourth

requirement.

The record demonstrates that the Court handed out written jury instructions to the jury—which included a second-degree murder instruction. (ECF No. 16-1 at 62.)[4] The Court also read the second-degree murder instruction to the jury before deliberation. (ECF No. 16-3 at 172–73.) It is axiomatic that Mr. McClearly could not have been deficient for failing to object to, nor could Petitioner have been prejudiced by jury instructions that did not include a second-degree murder instruction when the jury instructions included a second-degree murder instruction. Petitioner's ineffective assistance of trial counsel claim is entirely without merit. Ground two should be denied.

## Certificate of Appealability

Section 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section

---

[4] Petitioner concedes in his reply that the jury did in fact receive the written instructions for second-degree murder. (ECF No. 22 at 22.)

2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Accordingly, the undersigned recommends that the district court deny a certificate of appealability in its final order.

Rule 11(a) also provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that**:**

1.    The petition for writ of habeas corpus, ECF No. 1, should be **DENIED**.

2.    A certificate of appealability should be **DENIED.**

**IN CHAMBERS**  this 5th day of April 2018.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy**

thereof.  **<u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.